IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TIMOTHY ROTE**, | Case No. 3:16-cv-00471-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SILICON VALLEY BANK, INC.; CHESTER TE; LIVEVOX, INC.; ERIC GROTHE; CARLOS A. SAMOUR; BIEGING, SHAPIRO & BARBER, LLP; DUNCAN BARBER; JULIE TRENT; ADAM MICHELIN; THE RECEIVERS, INC.;** and **JOHN DOES 1-10**. | |
| Defendants. | |

Timothy Rote, 24790 SW Big Fir Road, West Linn, OR 97068. *Pro se* Plaintiff.

B. John Casey, K&L GATES, LLP, One S.W. Columbia Street, Suite 1900, Portland, OR 97258; Peter Bales and Peter G. Bertrand, BUCHALTER NEMER, 55 Second Street, Suite 1700, San Francisco, CA 94105-3493. Of Attorneys for Defendants Silicon Valley Bank, Inc. and Chester Te.

Casey M. Nokes, CABLE HUSTON LLP, 1001 SW 5th Avenue, Suite 2000, Portland, OR 97204-1136; Nathaniel P.T. Read, COHEN & GRESSER LLP, 800 Third Avenue, New York, NY 10022. Of Attorneys for Defendant LiveVox, Inc.

Allison R. Ailer and Friedrick C. Haines, COLORADO ATTORNEY GENERAL'S OFFICE, 1300 Broadway, Denver, CO 80203. Of Attorneys for Defendant Carlos A. Samour.

Christopher E. Hawk and Tanya C. O'Neil, GORDON & REES LLP, 121 SW Morrison Street, Suite 1575, Portland, OR 97204. Of Attorneys for Defendants Bieging, Shapiro & Barber, LLP, Duncan Barber, and Julie Trent.

**Michael H. Simon, District Judge.**

Plaintiff Timothy Rote ("Rote" or "Plaintiff") brings this civil action against Silicon Valley Bank, Inc. ("SVB"), Chester Te, LiveVox, Inc. ("LiveVox"), Judge Carlos A. Samour, Bieging, Shapiro & Barber, LLP,[1] Duncan Barber, Julie Trent, Eric Grothe, Adam Michelin, The Receivers, Inc., and John Does 1-10,[2] (collectively "Defendants").[3] Plaintiff alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). According to Rote, Defendants were part of a criminal enterprise engaged in a pattern of racketeering activity involving numerous RICO predicate acts, including extortion, bribery, fraud, tampering with witnesses, destruction of property, and obstruction of justice. Plaintiff asserts that Defendants intended to destroy Plaintiff's business interests, create unwarranted litigation against Plaintiff, and prevent Plaintiff from publishing materials concerning Defendants' behavior.

---

[1] Bieging, Shapiro & Barber LLP was misidentified in the amended complaint as "Beiging, Shapiro & Barber LLP."

[2] It does not appear that Grothe, Michelin, The Receivers, Inc., or John Does 1-10 have been served in this action. They have not yet appeared, and Plaintiff has not filed any proof of service on these parties. Consequently, Grothe, Michelin, The Receivers, Inc., and John Does 1-10 are not included in the Court's references to "Defendants."

[3] Golden Gate Capital, named as a defendant in the amended complaint, has since been dismissed by Plaintiff. ECF 30.

Before the Court are three motions to dismiss: (1) a motion to dismiss filed by Defendant

Judge Samour (ECF 24); (2) a motion to dismiss or, in the alternative, a motion for a more

definite statement filed by SVB and SVB's in-house counsel, Chester Te (collectively "SVB

Defendants") (ECF 28);[4] and (3) a motion to dismiss filed by Defendant LiveVox (ECF 35). The

SVB Defendants also ask the Court to take judicial notice of a blog post written by Rote, an

annual report from Rote's company filed with the Oregon Secretary of State, and three

documents from the Colorado state courts. ECF 29. Additionally, Rote attached numerous

documents to his declarations filed in response to the motions to dismiss. The Court construes

the attachment of these documents as a motion for the Court to take judicial notice of them. For

the reasons below, the SVB Defendants' motion for judicial notice is granted in part and denied

in part, Rote's motions for judicial notice are granted in part and denied in part, and Defendants'

motions to dismiss are granted. Plaintiff's claims against all defendants, including those that

have not yet been served or appeared, are dismissed.

## STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

---

[4] Defendants Bieging, Shapiro & Barber, Barber, and Trent (collectively "Barber
Defendants") have joined and incorporated by reference SVB and Chester Te's motion, briefing, and
arguments. ECF 48. Accordingly, those arguments are attributed to the Barber Defendants as
well.

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## B. *Pro Se* Plaintiff

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

For purposes of Defendants' motions to dismiss, the Court accepts as true the facts alleged in Plaintiff's Amended Complaint. ECF 9. The Court also considers additional facts set forth in the documents of which the Court has taken judicial notice, for purposes of general background.

Rote is a resident of Oregon. He owns Northwest Direct Teleservices ("NDT"), a corporation that operated telephone call centers in Oregon and Iowa. NDT originally had a contract with DataTel under which DataTel provided servers and software for NDT's call centers. TouchStar Software Corporation ("TouchStar") acquired DataTel, and NDT entered into a contract with TouchStar in May 2008. Under this Software Corporation Hardware Sales Agreement and End User License Agreement ("the Agreement"), TouchStar promised to deliver two servers to NDT that would provide blended inbound and outbound calling services with 192 agent seats (also called licenses) for a total of 576 telephone lines. NDT agreed to pay TouchStar $87,500 for the equipment, software, and services to be provided under the Agreement, and also promised to return certain DataTel equipment. Under the Payment Terms, NDT was required to pay $40,000 upon initial execution of the Agreement, and the remaining amount of $47,500 in three equal, consecutive monthly payments following installation acceptance. NDT paid the initial $40,000, but did not pay the remaining amount.

In March 2009, Rote discovered that foreclosure of TouchStar's assets by SVB was imminent. Rote alleges that at that time, TouchStar had violated the Agreement between TouchStar and NDT, and was attempting to terminate NDT's software licenses. SVB, meanwhile, was TouchStar's senior secured creditor. When TouchStar defaulted in June 2009, Colorado state court Judge Samour appointed Grothe as the receiver to manage TouchStar's assets. Grothe hired Michelin to provide management services at TouchStar during the receivership process.

Rote alleges that Michelin used the temporary software licenses to extort money from NDT. Rote further alleges that Michelin entered into an agreement with NDT not to terminate the software licenses, but then breached that agreement when Michelin discovered that Rote was speaking with a potential buyer of TouchStar.

In April 2009, NDT filed a lawsuit against TouchStar in the United States District Court for the District of Oregon, seeking a temporary restraining order preventing TouchStar from shutting down NDT's software. In early June 2009, the judge in the Oregon federal lawsuit granted TouchStar's motion to transfer venue to the District of Colorado, based on a forum selection clause in the Agreement. Before the District of Colorado court could hear NDT's emergency motion, however, SVB authorized TouchStar to shut down NDT's software on August 6, 2009, allegedly in an effort to eliminate the lawsuit filed by NDT. This shutdown allegedly could only have been performed through unauthorized access to NDT's server. On August 24, 2009, the Colorado federal court granted NDT's motion for a preliminary injunction, ordered TouchStar to reinstall NDT's computer software, ordered TouchStar to provide consistent and reliable access to 144 agent licenses, and enjoined TouchStar from including or

enforcing any expiration dates on the software licenses and from further interrupting NDT's service.

Rote alleges that NDT was one of TouchStar's unsecured creditors and that SVB structured the sale of TouchStar's assets to avoid having to pay any unsecured creditors. NDT received nothing from the sale of TouchStar's assets. Rote further alleges that over the next five years, SVB and its "enterprise affiliates" systematically sought to destroy NDT through a series of bribes and intimidation, including influencing state court judges.

SVB filed a complaint against NDT in Colorado state court in August 2009, seeking to collect the outstanding TouchStar account receivable. After NDT received the federal court order requiring TouchStar to reinstall NDT's software, SVB obtained in state court from Judge Samour an order staying NDT from enforcing the federal court's order. By the time that stay was lifted, SVB had sold TouchStar's assets. The company that purchased TouchStar's assets reinstalled the software at NDT in November 2009, for outbound calling. Inbound calling was moved to another platform.

NDT ultimately consented to jurisdiction in the Colorado state court receivership action before Defendant Judge Samour. On January 12, 2010, Judge Samour denied NDT's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Colorado federal Court. After ruling on some additional motions relating to NDT's and TouchStar's claims against one another, on March 23, 2013, Defendant Judge Samour notified the parties that he had transferred the receivership case to Colorado state court Judge Elizabeth Weishaupl. Judge Weishaupl presided over the remainder of the receivership case.

Judge Weishaupl presided over a four-day bench trial in March 2014. In July 2014, Judge Weishaupl entered her findings of fact and conclusions of law. The court found in SVB's

favor, holding that NDT breached the Agreement and that SVB was entitled to a money judgment against NDT. The court also found that the shutdown of the TouchStar software was authorized by the Agreement, and that the receiver effectuated the shutdown rather than SVB. Thus, SVB was not liable for breach of the Agreement.

Plaintiff alleges numerous acts of misconduct by Defendants throughout the state court litigation. These alleged acts include extortion, bribery, fraud, tampering with witnesses, corruption, destruction of property, and obstruction of justice.

## DISCUSSION

Plaintiff alleges three RICO claims under Section 1962. Defendants move to dismiss all claims, arguing under Federal Rule of Civil Procedure 12(b)(6) that Plaintiff has failed to state a claim upon which relief can be granted. The SVB Defendants also request judicial notice of several documents filed in support of their motion to dismiss. The Court also has construed Plaintiff's filings in response to the motions to dismiss to be a request for judicial notice.

## A.  Requests for Judicial Notice

### 1.  SVB Defendants

The SVB Defendants move for judicial notice of five documents: (1) a May 5, 2016 blog post from Timothy Rote's blog "Sitting Duck Portland" entitled "Chapter 60—What we want from Judges"; (2) the "Findings of Fact/Conclusions of Law" filed on July 30, 2014 in District Court, County of Arapahoe, State of Colorado in the action entitled *Robert G. Garber v. Defendant TouchStar Software Corp., et al.*, Case No. 2009CV1189; (3) the order for Silicon Valley Bank's Motion for Award of Attorneys' Fees and Costs filed on May 28, 2015 in District Court, County of Arapahoe, State of Colorado in the action entitled *Robert G. Garber v. Defendant TouchStar Software Corp., et al.*, Case No. 2009CV1189; (4) the mandate ordering that an appeal be dismissed, filed on April 3, 2015 in Colorado Court of Appeals, Court of

PAGE 8 – OPINION AND ORDER

Appeals Case No. 2014CA1805; and (5) the 2014 Annual Report for Northwest Direct Teleservices, Inc. filed with the Oregon Secretary of State on February 21, 2014.

A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment so long as the facts are noticed in accordance with the Federal Rules of Evidence. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Under the Federal Rules of Evidence, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Documents of which courts have taken judicial notice include filings by government agencies. *See, e.g.*, *N.W. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1026-27 (9th Cir. 2008) (taking judicial notice of the EPA's request for public comment).

A court also may take judicial notice of the contents of a document submitted to a government agency without ruling on the truth of the contents. *See Telesaurus VPC, LLC v. Power*, 2009 WL 273295, at *1 n.1 (D. Ariz. Feb. 5, 2009), *aff'd in part, rev'd in part on other grounds*, 623 F.3d 998 (9th Cir. 2010) (taking judicial notice of, among other things, an application for an FCC license); *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) ("It is appropriate for the court to take judicial notice of the content of the SEC Forms 4 and the fact that they were filed with the agency."). It is improper, however, for a court to take judicial notice of the veracity and validity of a public document's contents when the parties dispute the meaning and truth of the contents. *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (reversing a district court's grant of a motion to dismiss where the court not only took judicial

notice of undisputed matters of public record but also took judicial notice of "disputed facts

stated in public records" and relied on the validity of those facts in deciding the motion to

dismiss); *Patel*, 253 F.R.D. at 546 (noting after finding it appropriate to take judicial notice of

the content of forms filed with the SEC that "[t]he truth of the content, and the inferences

properly drawn from them, however, is not a proper subject of judicial notice under Rule 201");

*United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) ("While the court

may take judicial notice of the general meaning of words, phrases, and legal expressions,

documents are judicially noticeable only for the purpose of determining what statements are

contained therein, not to prove the truth of the contents or any party's assertion of what the

contents mean.").

The first document for which the SVB Defendants seek judicial notice, Exhibit 1 to their

motion (ECF 29-1), is a blog post from the website *Sitting Duck Portland*. The blog post is

entitled "Chapter 60—What We Want From Judges." A blog post is neither a "court filing" nor a

matter "of public record." *Reyn's Pasta*, 442 F.3d at 746 n.6. Additionally, a blog's accuracy is

subject to reasonable questioning, as blogs are not generally considered reputable sources. The

Court therefore does not take judicial notice of Exhibit 1.

The second, third, and fourth documents included in the SVB Defendants' request are

judicial orders from the Colorado state case and therefore are appropriate for judicial notice. *See*

*Reyn's Pasta*, 442 F.3d at 746 n.6. Accordingly, the Court takes judicial notice of Exhibits 2, 3,

and 4. ECF 29-2, 29-3, and 29-4. The fifth document is NDT's 2014 Annual Report filed with

the Oregon Secretary of State, a government agency, and the report is available on the Oregon

Secretary of State's website. Because the report is a public record, the Court takes judicial notice

of the existence of Exhibit 5, but will not take judicial notice of the truth of its contents to the extent that they are disputed by Plaintiff. ECF 29-5.

### 2. Plaintiff

Plaintiff also filed declarations, attaching numerous documents. ECF 40, 44, 45, 47. Plaintiff attached: (1) deposition transcripts from depositions taken in the Colorado state court proceedings, which were apparently filed as exhibits in the Colorado court proceedings; (2) transcripts of certain testimony from the Colorado state bench trial; (3) judicial orders filed in the Colorado state court proceedings; (4) other documents filed in the Colorado state court proceedings; and (5) judicial orders filed in the Colorado federal court proceedings. The Court takes judicial notice of the documents submitted by Plaintiff. For the deposition and trial transcripts, the Court does not deem the content of those documents to be true and does not rely on the facts contained within those documents.

## B. Standing

Defendants argue that Plaintiff lacks standing to bring a civil RICO claim because his only alleged injury is the loss of value he experienced as a shareholder in NDT and its affiliated companies.[5] Plaintiff alleges that the losses sustained by NDT, although already adjudicated and closed, were sustained because of a pattern and practice racketeering activity. Plaintiff further alleges that such racketeering activity destroyed NDT and its affiliated group of companies and that the loss in shareholder value of those companies is the loss asserted by Rote.

---

[5] Defendants make a number of other potentially meritorious arguments in their respective motions, including Defendant Judge Samour's argument that he is entitled to judicial immunity and Defendant LiveVox's argument that it did not participate in the alleged RICO enterprise. The Court does not reach these arguments, however, because the Court concludes that Plaintiff lacks standing.

### 1.  Standard

Section 1964 of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). In order to have standing to sue under this provision, "a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). The Supreme Court in *Holmes* rejected an exclusive "but for" causation standard for civil RICO claims, noting that causation must be both "but for" and proximate in order to assert a civil RICO claim. *Holmes*, 503 U.S. at 268.

In *Anza v. Ideal Steel Supply Corp.*, the Supreme Court emphasized the "attenuated connection" between the plaintiff's injury and the defendant's injurious conduct in its determination that the plaintiff had not established standing. 547 U.S. 451, 459 (2006). The Supreme Court further noted that there is a "requirement of a direct causal connection" and that the "immediate victims" are those who "can be expected to vindicate the laws by pursuing their own claims." *Id.* at 460. Essentially, "the Supreme Court clarified that the *Holmes* proximate cause requirement not only bars RICO suits by derivative victims, or those whose injuries are 'purely contingent on the harm suffered by' direct victims, but generally precludes recovery by those whose injuries are only tenuously related to the RICO violation at issue." *Canyon Cty.*, 519 F.3d at 981 (quoting *Anza*, 547 U.S. at 457). "Where the violation is not itself the immediate cause of the plaintiff's injury, proximate cause may be lacking." *Id.*

### 2.  Analysis

Rote concedes that the "losses sustained by Rote's company NDT have been adjudicated and are now closed." ECF 9 ¶ 108. NDT is therefore not a named plaintiff in this suit, nor can Rote bring a suit on NDT's behalf. As his injury, Rote alleges that the "racketeering activity destroyed Rote's affiliated group of corporations and it is the loss of that shareholder value [that] Rote is asserting as damages." *Id.* Allegations of shareholder loss, however, do not convey individual standing under RICO, absent a special relationship between the parties.[6] *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640-41 (9th Cir. 1988) (analyzing whether shareholders or guarantors have standing to assert individual RICO claims and holding that they do not).

As the Ninth Circuit explained in *Sparling*:

> The Sparlings argue that their harm is not derivative, but direct. This argument has no merit. The Sparlings must show either an injury distinct from that to other shareholders or a special duty between Hoffman and the Sparlings if they are to have standing to assert RICO claims based on injury to the corporation. The wrong alleged is a fraud on the corporation. Because [the Sparlings] are the sole shareholders they cannot show an injury distinct from that to other shareholders. Nor was there a special relationship between the Sparlings and Hoffman which would create the kind of duty required. Thus, the court was correct in ruling that [the Sparlings] had no standing as shareholders to assert a RICO claim.
>
> Any harm to the Sparlings due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation. Thus, this status does not give the Sparlings standing.

*Id.* (citations omitted); *see also Ahn v. Hanil Dev., Inc.*, 471 F. App'x 615, 617 (9th Cir. 2012) ("In the context of a § 1962(c) claim brought by an individual shareholder, the shareholder must allege harm unique to the individual, not harm to the corporation (*i.e.*, a RICO plaintiff may not

---

[6] There are no allegations demonstrating a special relationship sufficient to give rise to individual RICO standing between Plaintiff and Defendants, nor are the types of relationships between Plaintiff and each of the Defendants the types of relationships that would be considered sufficient to create the kind of duty required for individual standing under RICO.

acquire standing by alleging only derivative harm). Ahn lacks standing to assert a claim under
§ 1962(c) because his alleged injury is not unique to him. . . . Specifically, Ahn alleged that the
predicate acts underlying his derivative § 1962(c) claims 'defraud[ed] HDI of money' and
'render[ed] . . . Ahn's investment in HDI worthless,' thereby 'tak[ing] from him his share of
legitimate income earned by HDI.' These are allegations of derivative, not individual, harm."
(first alteration added, remaining alterations in original) (citations omitted)); *Desoto v.
Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) ("Shareholders and limited partners typically
lack standing to assert RICO claims where the harm is derivative of their corporation or
partnership's harm. Such plaintiffs can establish standing only by showing an injury 'distinct
from that to other shareholders' or a special duty between the shareholder and the defendant. The
gravamen of Desoto's complaint is injury to the Trago entities, so Desoto's injuries are
derivative." (citations omitted)).

Here, as in the cases discussed above, the gravamen of Rote's complaint is injury to
NDT, which resulted in a loss of value to NDT and its affiliated corporations, thereby resulting
in a loss of shareholder value to Rote. This is not a unique and direct harm to Rote, but only a
derivative injury. Accordingly, Rote does not have standing to bring claims under RICO. *See
also Warren v. Mfrs. Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985) (finding that the
plaintiff did not have standing under RICO where the plaintiff alleged injury as "the sole
shareholder" of the company allegedly destroyed by the bank's alleged racketeering conduct who
had "lost his total investment when his stock became worthless," and noting that "[i]n his
capacity as a shareholder of Paragon, any injury he incurred was actually one sustained by the
corporation. . . . diminution in value of the corporate assets is insufficient direct harm to give the
shareholder standing to sue in his own right" (quotation marks and citation omitted)).

Further, in order to sue on behalf of NDT's affiliated corporations, Rote would need to bring a derivative action under Federal Rule of Civil Procedure 23.1. Rote has failed to do so. Even if Rote were to file such an action, however, based on the facts alleged in the Complaint, Rote would be unable to establish proximate causation. According to the facts asserted in Rote's complaint, NDT was the direct victim of the alleged RICO enterprise. Any injuries to NDT's affiliated corporations, similar to the alleged injuries to Rote, were "purely contingent on the harm suffered by" NDT, which the Supreme Court has held to be an insufficient basis for standing. *Anza*, 547 U.S. at 457. In addition, the loss in value suffered by NDT's affiliated companies "could have resulted from factors other than [Defendants'] alleged [RICO violations]. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion" of the loss in value, if any, was caused by Defendants' alleged actions that allegedly harmed NDT. *Id.* at 459.

NDT was the direct victim of the alleged racketeering activity. Accordingly, because Rote was, at most, derivatively harmed by Defendants' alleged RICO enterprise and was only "tenuously" connected to the alleged RICO enterprise, Rote does not have standing to assert his claims under RICO. *Id.* at 457-59; *Canyon Cty.*, 519 F.3d at 981; *Sparling*, 864 F.2d at 640-41.

The Court dismisses Plaintiff's claims with prejudice. The facts alleged in the Complaint and the documents of which the Court has taken judicial notice demonstrate that the alleged RICO enterprise was directed at, and allegedly directly harmed, NDT. Accordingly, the Court finds that allowing an amendment would be futile. Although some of the named defendants have not yet been served or appeared, the Court dismisses this case in its entirety because all of the allegations against all of the defendants rely on the same theory of a RICO enterprise, which

allegedly directly harmed NDT and then, at most, only derivatively harmed Rote and NDT's affiliated companies.

## CONCLUSION

Defendant Judge Samour's motion to dismiss (ECF 24) is GRANTED. The SVB Defendants' request for judicial notice (ECF 29) is GRANTED in part and DENIED in part. The SVB Defendants' motion to dismiss (ECF 28) is GRANTED. Defendant LiveVox's motion to dismiss (ECF 35) is GRANTED. This case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 1st day of September, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge